James O. Shackelford, J.,
delivered the opinion of tbe Court.
This suit was brought for the use and occupation of two store houses in the city of Nashville, for the year 1862. The declaration is in the usual form. The defendants plead: First, a general denial of the debt; second, the defendant, McCrory, plead specially, that he rented from plaintiff the two store houses, for the year 1862, at the rate of $1,500 per annum for both; that he sub-let one of them to defendant, Armstrong, for $1,500; that the said Armstrong agreed to execute his note, payable quarterly, with security; that shortly after the renting, and befpre the execution of these notes, the plaintiff went to said Armstrong, and directed him not to execute his notes to the defendant, McCrory; that he was the owner of the property, and that defendant, McCrory, had no right to sub-let; thereby he failed to get the notes of the said Armstrong, and that he has become insolvent, and that he has sustained damages to the amount of the rent agreed to be paid. Replication and issue was taken on the several pleas. The jury, upon the evidence adduced and the charge of the Court, found the issue in favor of defendant, McCrory, and against the defendant, Armstrong, for $1,094.67, and against K. J. Morris and *625 H. H. Harrison, executors of Joseph Swan, for the sum of §29.
The plaintiff moved the Court for a new trial; and in support of the motion, read his affidavit, and the affidavit of T. B. Harris. The motion was overruled, and judgment rendered in accordance with the verdict; to which the plaintiffs excepted, and appealed in error to this Court. •
The facts necessary to be stated are as follows: The plaintiff, in 1861, rented the two store houses to one Joseph Swan, for §2,400, for that year,' and this suit was brought against him for the use and occupation of the same. He has since died, and Morris'and Harrison have qualified as his executors. About the time of the expiration of the renting, the plaintiff, who resided in Sumner county, came to Nashville, and tried to get Swan to deliver to him the possession of the - houses, stating to him that he had rented them for the year 1862 to Gilke-son & Co. Swan did not deliver the possession, but informed the plaintiff that they could move in; that he would not be in their way. He was told that they would not move in unless he would move out. Several applications were made to the plaintiff to get the possession, with like results. Swan continued to occupy one of the houses until the spring of 1862, as a store house. In the winter or spring of 1862, the roof of the house occupied by McCrory fell in, and he removed his desk to the house which Swan occupied. The store house was occupied by the defendant, Armstrong, for the year 1862. There is no proof in the record to show any occupation by Mc-Crory for the year 1862, except he kept his desk in the *626 room occupied by Swan, and was about tbe premises frequently.
The Court charged the jury, in substance: If the defendants, or either of them, leased the store houses, as alleged in the declaration, under a special contract, he or they would be liable according to the terms of the contract; that if the defendants*, or either of them, went into the possession, with the acquiescence of the 'plaintiff, and used and occupied the houses, they would be liable, if there was no special contract with either defendant. But if Swan had rented for 1861, at which time his renting expired, and he failed to give possession, and held over by permission of the plaintiff; or if he stated to plaintiff that his tenants could move in at any time, yet Swan remained there in one or .both of the houses a short time, or used and occupied the same without contract, Swan would be bound for reasonable rent; and if, while he so occupied one or both of the houses, the defendant, Armstrong, moved in and occupied one or both of said houses, for the year 1862, he (Armstrong) would be liable for a reasonable rent for the year, or for the time he used and occupied the same.
The plaintiff's counsel requested' the Court to charge the jury, that if the plea of the defendant, McCrory, shows a contract for the renting of the houses for 1862, the replication admits that this being so, no other proof is necessary to prove the contract. These instructions were refused by the Court. The Court instructed the jury, the plea of non assumpsit being in, throws the onus of proof on the plaintiff.
That part of his Honor’s charge to which exception *627 is taken, is, in which he states to the jury: “If Swan stated to the plaintiff that his tenant -could move in at any time, yet if said Swan remained there a short time, in one or both houses, or used and occupied the same, without contract, he would be bound for the house he so remained in and occupied, for a reasonable rent.” This part of the charge we think erroneous.
Where the letting is from year to year*, or for a year, if the tenant holds over, the landlord may elect to treat him as a tenant from year to year; or where the renting is for a shorter period, and he holds 'over, he will be deemed to hold upon the terms upon which he entered, and the landlord is entitled to recover the value of the rent, as fixed by the terms of the original contract upon which the lease was made. It is the duty of the tenant, at the expiration of his term of leasing, to restore the possession to the landlord. He cannot impose terms on him, as to the possession of the property. To avoid the liability the law throws upon him, he must surrender the possession. If he refuses to quit, the landlord will not be justified in resorting to force to put him out. He may either resort to his legal remedy to get the possession, or treat him as a tenant. The tenant must, at the expiration of the term, give the landlord the complete possession of the property; and unless this is done, the tenant’s responsibility for rent will not cease, and he will be deemed to hold upon the terms upon -which he entered into possession: Sheppard & Mitchell vs. Cummins, 1 Cold., 353; Taylor’s Landlord and Tenant, 382, 475.
It is insisted the Court erred in refusing the instruction .asked for; that the plea is evidence in the admis *628 sion of the contract, and no evidence was necessary to prove it. These pleas are filed under the provisions of the Code, embraced in Article 5, which are not repealed by the Act passed February 14, 1860. By that Act, the parties have their option to plead as prescribed in the sections embraced in that article of the Code. The defendant having adopted the system of pleading provided by those sections of the Code, we must be governed by its provisions. By section 2913, the defendant may enter a general denial of the plaintiff’s cause of action. By section 2915, whenever such a general plea is filed, the defendant shall, unless notice is waived, give notice of all his real defenses, whether by way of denial or avoidance, though such defense might have been admissible heretofore under the general issue; or he may plead the 'matters of his defense specially; in which case he shall state the matters relied upon purely and briefly; and no matter of defense not pleaded shall be shown in evidence. Under these several sections of the Code, the defendant is allowed to plead such defenses as he may deem necessary to the justice of his case. He is allowed, in one plea, to deny what the plaintiff alleges, and in another to confess or avoid it, which is, in law, an admission in one plea of what he denies in another; but the admission does not relieve the plaintiff from the burden of proving what is directly denied by the other plea: 1 Chitty on Pleading, 515, arid the authorities cited; History of a Law Suit, section 237. We think there is no error in refusing the instructions.
It is insisted the Court erred in overruling the motion for a new trial as to the defendant, McCroiy. This ap *629 plication was predicated upon the affidavits of the plaintiff, and the witness, Harris. The plaintiff states that the witness, Harris, had been summoned by the defendants, but they declined to examine him, and he called him to the stand, and he was asked if he had ever had any conversation with the defendant, McCrory, in reference to the renting of these houses He answered in the negative. He now learned he could prove by Harris that he had a conversation, in which he stated he had rented them. Harris, in his affidavit, states that he was asked the question, but did not know the question was in reference to the renting in 1862; that he had a conversation with Mc-Crory, in which he admitted it; that he unthoughtedly neglected to state the conversation; that after the trial, McCrory stated to him he had rented the houses for the year 1862. The evidence of Harris is cumulative. The fact in issue was the renting to McCrory for the year 1862. Witness had been introduced upon that point. Cumulative evidence is that which speaks of facts, in relation to which there was evidence on the trial. In such cases, a new trial will not be granted: 4 Hum., 252. The fact that the attention of the witness was not specially directed to the conversation had with him by Mc-Crory, relative to the renting, can be no reasonable ground for granting a new trial. Upon due attention it might have been brought out in his testimony, and, under such circumstances, the party can not avail himself of his own laches. Where a witness inadvertently omitted to state all he knew material to the case, it is no ground for a new trial: Hilliard on Hew Trials, 411, and authorities there cited. We think there is no error in refusing to *630 grant a new trial as to McCrory. There is no error in the charge of the Court, as to Armstrong, of which plaintiff can complain.
The judgment against Morris and Harrison, executors .of Swan, will be reversed and remanded, and a new trial awarded. As to the other defendants, it will be affirmed.